## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**KIMBERLY GRIPPA,**                    **CASE NO. 4:20cv457-MW/MAF**

    **Plaintiff,**

**vs.**

**RONALD RUBIN,**

    **Defendant.**

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANT'S
### MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiff, Kimberly Grippa, through her counsel, responds to Defendant's

Motion to Dismiss [ECF 4] and states:

### Introduction and Rule 12(b)6 Standard

The scope of Defendant's motion far exceeds the scope of Rule 12(b)6.

Ashcroft v Iqbal, 556 U.S 662 (2009) requires that a motion to dismiss note the areas

in which a complaint relies on legal labels instead of subsidiary facts.  Defendants

fail to follow this directive.  In deciding a motion to dismiss, the Court's analysis is

limited to the four corners of the plaintiff's complaint and the attached

exhibits. Grossman v. Nationsbank, 225 F.3d 1229, 1231 (11th Cir.2000).

Defendant ignores this directive and argues facts outside the four corners of the

complaint and for this reason alone, his Motion should be denied.

The Court must also accept the Plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. Caravell v. American Airlines, Inc., 315 F.Supp.2d 1346, 1348 (S.D.Fla.2004) (citing United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir.1999) (en banc)). Defendant also ignores this standard.  A motion to dismiss a complaint should not be granted if the factual allegations are "enough to raise a right to relief above the speculative level." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Nevertheless, a complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." Id.

The issue to be decided by the Court is not whether the Plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232 (1974).  It is only "when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action [that] dismissal of the complaint is appropriate." Excess Risk Underwriters, Inc. v. LaFayette Life Ins. Co., 208 F.Supp.2d 1310, 1313 (S.D.Fla.2002) (citing Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir.1993)).  Again, Defendant ignores this rule and instead provides the court with what appear to be, "alternative" allegations, based upon inadmissible hearsay, irrelevant statements and reference to exhibits that are not attached to the Complaint.

Defendant argues that his defamatory expressions are protected by absolute privilege because only some of the defamatory statements were made in his pleadings in other lawsuits where Plaintiff is referenced but is not a party. Florida's litigation privilege does not apply to his pleadings for both procedural and substantive reasons explained herein. Defendant then argues that his letters to the Governor were "not about Grippa". Not only is this assertion a question of fact, but Plaintiff alleges that Defendant's communication to the Governor included a link to the defamatory expressions made about Plaintiff. [Amended Complaint ¶ 15].[1]

Defendant then argues his defamatory statements were pure opinion and not defamation. This is another faulty argument based upon the analysis herein. Finally, Defendant inaccurately claims, in passing, that Plaintiff's suit is a SLAPP suit and mis-quotes legal authority for the proposition that this Court should entertain such an argument. Plaintiff does not waive her objection to this Court considering the Florida anti-SLAPP statute's application. Defendant's arguments are not supported by the allegations of the complaint and pertinent law.

Most of Defendant's argument is based upon allegations outside the four corners of the Amended Complaint, inadmissible hearsay, and allegations in Defendant's lawsuits outside of the instant lawsuit that are mischaracterized as

---

[1] This issue is not addressed in legal argument herein as Defendant mis-stated the facts as alleged and a correction of those allegations are all that is required to address this particular argument or false statement by Defendant.

"undisputed facts".  Defendant makes statements in his response as if they are facts but in reality, they are alternate allegations outside the four corners of the Amended Complaint which should be ignored by this Court as impermissible under Rule 12(b)6.

## I.  Allegations of Defamation in the lawsuit are not protected by the litigation privilege.

Defendant's argument that his defamatory statements made about Grippa in his pleadings in other lawsuits where Grippa is not a party, fall within Florida's litigation privilege fails for both procedural and substantive reasons.  Florida adopted its litigation privilege to  protect  testifying  witnesses  against  defamation  suits premised on statements they made in open court. *See* Myers v. Hodges, 53 Fla. 197, 44 So. 357, 361–62 (1907).  Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1218 (11th Cir. 2018).

Under Florida law, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding ... *so long as the act has some relation to the proceeding*." Green Leaf Nursery v. E.I. DuPont De Nemours and Co*.,* 341 F.3d 1292, 1302 n. 8 (11th Cir.2003); Williams v. Carney, 157 Fed. Appx. 103, 107 (11th Cir. 2005). Florida's litigation privilege is an affirmative defense, so defendants bear the burden of proving its applicability.  Diamond Resorts Int'l, Inc. v. Aaronson, 371 F. Supp. 3d 1088 (M.D. Fla. 2019).

4

Plaintiff is not a party to Defendant's lawsuits (including Case No. 2019 CA 002535) where he nonetheless uses her name and states that Grippa is a co-conspirator of the "enterprise" that Rubin claims blackmailed, intimidated and extorted him and that she was associated with "racketeering, political corruption, abuse of power, and misuse of taxpayer money at the highest levels of DFS". [Amended Complaint ¶ 13]. But Defendant has not officially named Ms. Grippa, nor Mr. Grippa for that matter, as a party in the case and as such she has no means of defending herself against the unsubstantiated, impertinent, scandalous, and false accusations Defendant has cast upon her in an attempt to swing the spotlight away from himself and his abhorrent and illegal behavior. [Amended Complaint ¶ 14]

Defendant's assertion of the litigation privilege faces two problems at this stage of the proceedings. The first is a procedural error. Defendants' Motion is silent on the actual statements or acts he claims are protected by the litigation privilege merely stating they are the "allegations in the Mitchell lawsuit". And because Defendant failed to argue the application of the litigation privilege to specific statements and acts in his Motion (thereby providing Plaintiff the opportunity to rebut the application of the privilege), Defendant has failed to prove his entitlement to the privilege. So, on that basis alone, Defendant is not entitled to dismissal on his assertion of Florida's litigation privilege. Aaronson, 371 F. Supp. 3d at 1112 ("because Defendants failed to argue the application of the litigation privilege to

specific statements and acts in their Motion (thereby providing Diamond the opportunity to rebut the application of the privilege), Defendants have failed to prove their entitlement to the privilege. So, on that basis alone, Defendants are not entitled to summary judgment on their assertion of Florida's litigation privilege.")

Not only is Defendant's claim procedurally barred but it is substantively barred. Contrary to Defendant's overly broad application of the litigation privilege, the scope of the litigation privilege has actually been narrowed in recent years. In Debrincat v. Fischer, 217 So.3d 68 (Fla. 2017), the Court receded from the broad language in Echevarria v Cole, 950 So.2d 380 (Fla. 2015) cited by Defendant. There, Fischer filed a malicious prosecution suit against Debrincat alleging that Debrincat maliciously added Fischer as a party defendant in an earlier action. Debrincat asserted that the litigation privilege immunized his conduct of adding Fischer as a defendant in the earlier action, but the Florida Supreme Court disagreed. It concluded that the litigation privilege does not provide immunity from claims for malicious prosecution, principally because if it did so it "would eviscerate [that] long-established cause of action." Debrincat, 217 So.3d at 70.

After Debrincat, and despite the broad formulation in Echevarria, the Florida Supreme Court is no longer of the view that the litigation privilege offers *per se* immunity against any and all causes of action that arise out of conduct in judicial proceedings. See id. Rather, the applicability of the privilege must be assessed in

light of the specific conduct for which the defendant seeks immunity. Faced with this backdrop, the court in <u>Sun Life Assurance Co. of Canada</u>, 904 F.3d at 1218–19, asked whether Florida's litigation privilege would immunize a defendant from a breach of contract claim where the act that allegedly breached the contract was the filing of a lawsuit. The court concluded it did not.

The same analysis applies to the instant lawsuit. Plaintiff is not a party to the lawsuits where she is being defamed by the pleadings of Defendant. Because she is not a party, she does not have the protection against the defamation a party would be afforded in those lawsuits. The filing of the Mitchell lawsuit and others where Defendant maliciously defames Plaintiff is the very act being sued upon. Plaintiff is not suing on defamatory statements made in the instant litigation.

In addition, the absolute privilege does not apply **"where an attorney steps outside of both the courtroom and the formal discovery process to investigate a claim." <u>DelMonico v. Traynor</u>, 116 So.3d 1205, 1218 (Fla. 2013). In the instant matter, the Defendant is being sued for matters outside this lawsuit and outside the formal discovery process. Instead, a "qualified privilege" applies "to statements made by attorneys as they undertake informal investigation during pending litigation and engage in ex-parte, out-of-court questioning of nonparty witnesses, 'so long as the statements are relevant to the subject of inquiry' in the underlying suit." <u>Id.</u> (quoting <u>Levin</u>, 639 So.2d at 607). If the court determines that the qualified

privilege applies, the burden is on the plaintiff to "prove the additional element of express malice." Id. at 1219. Arko Plumbing Corp. v. Rudd, 230 So. 3d 520, 524 (Fla. 3d DCA 2017). Express malice "may be established indirectly, i.e., 'by proving a series of acts which, in their context or in light of the totality of surrounding circumstances, are inconsistent with the premise of a reasonable man pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill-will, or other bad motive.'" McCurdy v. Collis, 508 So.2d 380, 382 (Fla. 1st DCA 1987) (quoting S. Bell Tel. & Tel. Co. v. Roper, 482 So.2d 538, 539 (Fla. 3d DCA 1986)). "Where," as here, "the circumstances surrounding the statement are in dispute, the question of qualified privilege is a factual determination for resolution by the jury." Id.; see also id. at 385 ("Since we recognize the difficulties involved in determining whether malice was the [primary] motivating factor in this interference case, we conclude the qualified privilege issue should be resolved by the trier of fact."). 230 So.3d 520, 528. This analysis applies to the instant allegations where Plaintiff alleges that the statements made in the Mitchell lawsuit where she is not even a party, were made with malice.

In McCurdy v Collis, 508 So.2d 380 (Fla. 1st DCA 1987), the Exxon Corporation relied on the testimony of a doctor to tell an employee's supervisor that the employee was not safely able to work on Exxon property. Id. at 381–82. Exxon, when sued for tortious interference with a business relationship, claimed the

qualified privilege applied to its statements to the supervisor. The first district concluded that there was evidence of Exxon's express malice because "the record indicate[d] that Exxon personnel based their decision that [the employee] was a safety risk on the basis of third party reports concerning Dr. Johnson's trial testimony," the company "conducted no independent investigation of [the employee's] job performance, and in fact his employers advised Exxon that [the employee] was doing a good job." Id. at 384; see also Corp. Fin., Inc. v. Principal Life Ins. Co., 461 F.Supp.2d 1274, 1294 (S.D. Fla. 2006) ("Plaintiffs have produced sufficient circumstantial evidence ... from which a reasonable jury could find that Castrillon was the source of the altered information, [and] that he was motivated by an intent to injure Plaintiffs ...."). There was a factual dispute about Exxon's motive because it had contrary information about the employee's ability to work and did not investigate.  230 So.3d 520, 528-29. "The mere existence of litigation 'does not attach the privilege to every communication ...; rather, the communication must be analyzed in light of its relation to the litigation.'" Braxton Techs., LLC v. Ernandes, No. 6:09-cv-804-Orl-28GJK, 2010 WL 11623673, at *4 (M.D. Fla. Apr. 22, 2010) (quoting N. Star Capital Acquisitions, LLC v. Krig, 611 F.Supp.2d 1324, 1331 (M.D. Fla. 2009)).

"Florida courts have been reluctant to endorse a wholesale extension of the litigation privilege to those communications that have some relation to

subsequent litigation." Id.   From that, Florida courts have curbed extension of the litigation privilege to conduct "'in the course of judicial proceedings' so long as the conduct has 'some relation to or connection with the subject of inquiry'" and "to conduct that is 'necessarily preliminary' to judicial proceedings." AGM Invs., LLC v. Bus. Law Grp., PA, 219 So.3d 920, 924 (Fla. 2d DCA 2017) (citations omitted); see also Braxton Techs., LLC, 2010 WL 11623673, at 4. Conduct that is "necessarily preliminary" to a judicial proceeding is limited to pre-suit communications that are a statutory or contractual condition precedent to suit. See, e.g., Pledger v. Burnup & Sims, Inc., 432 So.2d 1323, 1327 (Fla. 4th DCA 1983) (declining to extend absolute immunity to pre-litigation settlement efforts); see also Trent v. Mortg. Elec. Registration Sys., Inc., 618 F.Supp.2d 1356, 1361 (M.D. Fla. 2007) (declining to extend the litigation privilege to pre-suit communications not required by law), aff'd, 288 F. App'x 571 (11th Cir. 2008).  Diamond Resorts Int'l, Inc. v. Aaronson, 371 F. Supp. 3d 1088, 1110–11 (M.D. Fla. 2019).

However, not every event bearing any relation to litigation is protected by the privilege because, "[i]f the litigation privilege applied to all actions preliminary to or during judicial proceedings, an abuse of process claim would never exist, nor would a claim for malicious prosecution." N. Star Capital Acquisitions, LLC v. Krig, 611 F. Supp. 2d 1324, 1330 (M.D. Fla. 2009).  Tortious conduct will not be protected by the litigation privilege as being preliminary to future litigation unless

that future litigation was actually contemplated **in good faith and under serious consideration.**  AGM Inv'rs, LLC v. Bus. Law Group, P.A., 219 So. 3d 920 (Fla. 2d DCA 2017) (emphasis added).

In Rhonda Hollander, P.A. v. Fortunato, 45 Fla. L. Weekly D825 (Fla. 3d DCA Apr. 8, 2020), the court concluded that petitioners were not entitled to a writ of certiorari because the litigation privilege does not apply when a Defendant knows it had no basis to proceed with collection activity and litigation.  It held that under the circumstances, the litigation privilege did not apply where the respondent alleged in the trial court that petitioners violated section 559.72, Florida Statutes (2014) by sending threatening collection letters demanding payment of maintenance assessments, interest, late charges, and attorney's fees (collectively "dues"), despite having actual knowledge that the basis of the payments, a Declaration, was expired and unenforceable when the letters were sent. See AGM Investors, LLC v. Business Law Group, P.A., 219 So. 3d 920 (Fla. 2nd DCA 2017); Cole v. Echevarria, McCalla, Raymer, Barrett & Frappier, 965 So. 2d 1228 (Fla. 1st DCA 2007); and Fuller v. Becker & Poliakoff, P.A., 192 F. Supp. 2d 1361 (M.D. Fla. 2002).

The same is true in the instant matter.  Plaintiff alleges that Defendant had no basis to make defamatory comments about her in the Mitchell lawsuit knowing his statements and comments were false.  Defendant would also have known that Plaintiff would have no ability in the Mitchell lawsuit, by failing to name her as a

party, to challenge these false statements.  He cannot now be permitted to hide behind the litigation privilege to escape liability for his inexcusable conduct. Defendant is not protected by the litigation privilege.

## II.    Defendant is Not Entitled to "Qualified Privilege"

Defendant argues that his letters requested an investigation of Patronis for misuse of public office by the Chief Inspector General, as authorized by statute. As such he claims his letters were qualifiedly privileged. Defendant recognizes that there is no qualified privilege if the publication was made with malice.  However, Defendant is wrong when he argues that Plaintiff's allegation of malice is insufficient to state a cause of action. Defendant also mis-construes Baker v Joseph, 938 F. 2d 1265 (S.D. Fla. 2014) as it applies to the allegations of this complaint. Baker states:

> In the interests of judicial economy, the Court addresses here Defendant's argument that the complaint's allegation as to "actual malice" is not well-pleaded. Actual malice, a necessary element in libel actions against public figures, requires that "the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz v. Robert Welch,* 418 U.S. 323, 342, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Here, the operative complaint asserts only that "Defendants statements were made with actual malice." This statement is a legal conclusion and, as such, does not satisfy the well-pleaded allegation requirement set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (holding that a plaintiff's grounds for relief must be based on factual allegations, not a formulaic recitation of the elements of a cause of action); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 667–80, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting and citing *Twombly* ); *Mamani v. Berzain,* 654 F.3d 1148, 1153 (11th Cir.2011) (quoting and

citing *Iqbal* ). In reaching this conclusion, the Court declines to follow *LEVY v. STEVEN A. LERMAN & ASSOCIATES, INC.,* 2011 WL 1153277, 2011 U.S. Dist. LEXIS 79560 (S.D.Fla.2011), the unpublished district court opinion cited by Plaintiffs, in which the court held that actual malice is properly pled when the complaint lists the defamatory statements and then alleges that the statements were made with knowledge of their falsity or with reckless disregard for the truth. Inasmuch as *LEVY* holds that a plaintiff can plead actual malice without alleging facts substantiating defendant's knowledge of the falsity of the challenged statements or defendant's reckless disregard for the truth, the holding is at odds with *Twombly* and *Iqbal*.

Baker v. Joseph, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013).

Contrary to Baker, Plaintiff had a stellar career. [Amended Complaint ¶ 6]. During an interview with Defendant he made numerous discriminatory statements to Plaintiff and she complained in writing about these statements on May 13, 2019 to the Chief of Staff for the Department of Financial Services (DVS), which, in part, resulted in Defendant being found guilty of official misconduct and removed from office. [Amended Complaint ¶ 11-12]. He then got mad and retaliated by making spurious, inflammatory and false statements about her.

After she complained about his behavior DFS, Rubin falsely accused Plaintiff of blackmail, racketeering and other criminal conduct in multiple forums including lawsuits where she was not named as a party, letters to the Governor and other public officials, and publications with nationwide circulation. [Amended Complaint ¶ 13, 15, 16]. Plaintiff alleged her career and her reputation have been ruined. [Amended Complaint ¶ 19]. Plaintiff alleges these statements were malicious, made with

knowledge that they were false or with reckless disregard of the falsity, and in bad faith. [Amended Complaint ¶ 23, 27].  Therefore, these allegations do not fall within Baker and are clearly sufficient under the controlling pleading standard.

Malice may also be inferred from the language itself.  Coogler v. Rhodes, 38 Fla. 240, at 249, 21 So. 109, at 112 (1897).  Examples of cases where the false and defamatory words themselves were so extreme as to intrinsically show express malice are: Loeb v. Geronemus, 66 So.2d 241 (Fla.1953) (defendants said plaintiff was guilty of evil conduct, was of low moral character, was a disgrace, a troublemaker, was not respectable, had been compelled to leave Chicago); Brown v. Fawcett Publications, Inc., 196 So.2d 465 (Fla. 2d DCA 1967) (defendant said plaintiff was a murderer, rapist, and sodomite).

Plaintiff believes that Rubin's ill-will toward the Plaintiff is demonstrated by his words alone as pled in the Amended Complaint but if the Court finds that these statements are insufficient, Plaintiff requests leave to amend to add additional facts to support a finding of malice.

### III Whether Defendant's Statements are Pure Opinion Cannot be Decided at this Stage

Defendant also argues that to be actionable, defamatory statements must not be statements of pure opinion.  Plaintiff does not disagree with this premise but does disagree with Defendant's faulty legal analysis as it applies to the allegations of the instant lawsuit.  Defendant takes the position that his defamatory statements are

"pure opinion", notwithstanding the fact that Defendant has included defamatory statements in a lawsuit falsely alleging Plaintiff participated in crimes, and has included comments like this which are identified above in other papers that he sent to the Governor, other public officials and had printed in forums with nationwide circulation.

Defamation has the following five elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory. Jews for Jesus, Inc. v. Rapp, 997 So.2d 1098 (Fla. 2008). The distinction between "actual fact" and "opinion" was discussed at length by the Fifth District in Ford v. Rowland, 562 So.2d 731 (Fla. 5th DCA 1990). There, a purported poem characterized a county commissioner, Sue Ford, as a "hooker". The panel noted that, if an allegedly defamatory publication is reasonably susceptible of two meanings, one of which is defamatory and one of which is not, it is for the trier of fact to determine the meaning understood by the average reader. Ford, 562 So.2d at 734; see also Perry v. Cosgrove, 464 So.2d 664 (Fla. 2d DCA 1985); Miami Herald Publishing Company v. Ane, 423 So.2d 376, 389 (Fla. 3d DCA 1982), approved, 458 So.2d 239 (Fla.1984); Belli v. Orlando Daily Newspapers, Inc., 389 F.2d 579 (5th Cir.1967), cert. denied, 393 U.S. 825, 89 S.Ct. 88, 21 L.Ed.2d 96 (1968).

Whether a particular assertion is a "statement of fact", "mixed opinion", or "pure opinion" is determined by the trial court by the nature of the statement. Without question, pure opinions are not actionable. However, "mixed opinions", statements which are based on undisclosed facts that infer the plaintiff has committed an illegal or immoral act, are actionable. Scott, 907 So.2d at 668. An example of "mixed opinion", which is actionable, appears in Hoch v. Rissman, Weisberg, Barrett, 742 So.2d 451, at 460 (Fla. 5th DCA 1999) in which the comment that a judge "liked young men in shorts" was discussed, which implied that the judge could be improperly influenced, although the implication was based on facts not disclosed. Moreover, the U.S. Supreme Court has recognized that "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications." Milkovich v. Lorain Journal Co., 497 U.S. 1, 18–19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); see also Anson v. Paxson Communications Corp., 736 So.2d 1209 (Fla. 4th DCA 1999) (holding that false remarks on a radio talk show were not automatically shielded from liability merely because they were opinions).

In the case at bar, the statements in Defendant's various publications are, indeed, either "mixed opinion" or statements of fact, and are not "pure opinion".

From the Second Amended Complaint Plaintiff alleges that the following statements

were made by Defendant with malice:

13.    Defendant has also filed several lawsuits (including Case No. 2019 CA 002535) wherein GRIPPA is listed as a co-conspirator of the "enterprise" that Rubin claims blackmailed, intimidated and extorted him and that she was associated with "racketeering, political corruption, abuse of power, and misuse of taxpayer money at the highest levels of DFS".

15.    Subsequent to the complaints by Plaintiff against Rubin referenced in paragraph 9 above and on the day the lawsuit referenced above was filed, Rubin, through counsel, sent emails to Governor Ron DeSantis and Chief Inspector General Melinda Miguel, on June 21, 2019 in which he referenced his "enterprise" and the lawsuit identified in paragraph 13 above, in which Plaintiff was included as a named participant in this fictitious "enterprise."  The lawsuit that Rubin filed referenced above was included as a hyperlink to the email to Miguel. In the emails to both DeSantis and Miguel on June 21, 2019, Rubin detailed improper, unethical and seemingly unlawful conduct on the part of Plaintiff.  Thus, Rubin, through his counsel, has publicly and falsely disparaged Plaintiff in his communication to Governor DeSantis and Miguel.

16. Moreover, in a statement/letter that Rubin provided to state investigators on May 30, 2019, presumably including without limitation the Office of the Inspector General within the Department of Financial Services and to other persons/entities including without limitation to FLAPOL, a publication through floridapolitics.com, Rubin falsely stated that Plaintiff was not "qualified to be the agency's enforcement director," that Plaintiff "had an air of entitlement and that [he] feared she would make [his] staff and other OFR employees miserable."  In his May 30, 2019 statement/letter, incorporated into the FLAPOL article of statewide if not national circulation, Rubin further falsely stated that Plaintiff had "not even pretended [their] lunch was a real interview and that she was angry because [he] had treated it as a real interview."  These comments constitute defamation *per se* or *per quod*.

As noted above, the correct statement of the principle is that, *for the purpose of determining whether a statement is actionable as "mixed opinion" or "statement of fact"*, a court must

> . . . consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

Morse v. Ripken, 707 So.2d 921, at 922 (Fla. 4th DCA 1998); Keller v. Miami Herald Pub. Co., 778 F.2d 711, at 717 (11th Cir. 1985); Demby v. English, 667 So.2d 350, at 355 (Fla. 1st DCA 1995).

However, once resolved as actionable, even a single defamatory statement may support a claim for damages.  None of the cases cited in Defendant's motion support the proposition that, once the defendant's statements are characterized as "mixed opinion" or "fact", a single false statement may not form the basis for a defamation action.  The case law otherwise is legion: see e.g., Hoch v. Rissman, Weisberg, Barrett, 742 So.2d 451, at 460 (Fla. 5th DCA 1999) (judge "liked young men in shorts"); Scott v. Busch, 907 So.2d 662 (Fla. 5th DCA 2005) (single public statement that plaintiff illegally obtained his building permit was actionable); Eastern Air Lines, Inc. v. Gilbert, 438 So.2d 923, at 927-928 (Fla. 3d DCA 1983) (action based on a single statement about an airline pilot that "he's paranoid"), *disapproved on other grounds,* Ter Keurst v. Miami Elevator Co., 486 So.2d 547

(Fla. 1986); <u>Masson v New York Magazine, Inc.</u>, 521 U.S. 496 (1991)(the court held that "[w]e allowed the defamation action to go forward in that case, holding that a reasonable trier of fact could find that the so-called expressions of opinion could be interpreted as including false assertions as to factual matters.")

Self-evidently, neither the context of the statements by Rubin nor the circumstances surrounding his comments can be considered based on the pleadings alone, and dismissal on this ground should be denied.  Context matters.  In <u>Don King Productions, Inc. v. Walt Disney Co.</u>, 40 So.3d 40, at 44 (Fla. 4th DCA 2010), the Fourth District noted in the context of considering "actual malice", that, while "ill will" is different from "actual malice", "ill will", combined with other evidence, may amount to actual malice.   <u>See also</u> <u>Harte–Hanks Commc'ns, Inc. v. Connaughton</u>, 491 U.S. 657, 668, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) (noting that a plaintiff may prove the defendant's state of mind through circumstantial evidence, such as evidence of motive); <u>Perk v. Reader's Digest Ass'n</u>, 931 F.2d 408, 411 (6th Cir.1991) (stating that a plaintiff "can present proof of malice in the form of cumulative circumstantial evidence, which is often the only way to prove malice in libel cases"); <u>Coogler v. Rhodes</u>, 38 Fla. 240, at 249, 21 So. 109, at 112 (1897).  "Because direct evidence of actual malice is rare, it may be proved through inference, … and circumstantial evidence."   <u>Levesque v. Doocy</u>, 560 F.3d 82, 90,(1st Cir. 2009); <u>Herbert v. Lando</u>, 441 U.S. 153, 170, 99 S. Ct. 1635, 60 L. Ed. 2d 115 (1979) ("It

may be that plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself."); <u>Sindi v. El-Moslimany</u>, 896 F.3d 1, 16 (1st Cir. 2018) ("Since 'direct evidence of actual malice is rare,' we have permitted actual malice to be proved through inference and circumstantial evidence alone."); <u>Levesque v. Doocy</u>, 560 F.3d 82, 90 (1st Cir. 2009).[2]

Based on the foregoing, Defendant has failed to demonstrate that the alleged statements in any of the publications are "pure opinion."

**IV. This is not a SLAPP lawsuit and Defendant is otherwise unable to avail himself of this Florida law**

Defendant merely references Florida's anti-SLAPP statute in passing and does not ask for any relief under the Florida anti-SLAPP statute other than attorney fees should the statute possibly apply. For instance, Defendant does not contend that resolution of this motion is evaluated under a summary-judgment standard and he does not request an expedited hearing. <u>See</u> Fla. Stat. § 768.295(4) (providing that a defendant may file a motion for summary judgment seeking a determination that the anti-SLAPP statute has been violated). Under identical facts, the Court in

---

[2] Defendants in libel cases typically claim that they believed the story was true when they published it, and the law wisely does not put too much stock in such protestations of innocence. Proof of actual malice is not defeated by a defendant's self-serving protestation of sincerity.   <u>Bentley v. Bunton</u>, 94 S.W.3d 561, at 595-596 (Tex. 2002).  <u>See also</u> 1 Rights and Liabilities in Media Content, section 6:53, "<u>New York Times v. Sullivan</u>: bringing the First Amendment to bear on defamation law–Proving the existence of actual malice" (June 2020).

Incarcerated Entm't, LLC v. Warner Bros. Pictures, 261 F. Supp. 3d 1220, 1233–34 (M.D. Fla. 2017) declined to address the application of Fla. Stat. § 768.295. Compare Royalty Network, Inc. v. Harris, 756 F.3d 1351, 1357–62 (11th Cir. 2014) (holding that verification requirement imposed by Georgia's anti-SLAPP statute did not apply in a diversity case), and Abbas v. Foreign Policy Grp., LLC, 783 F.3d 1328, 1337 n.5 (D.C. Cir. 2015) (holding that attorney's fees were not available under Washington D.C.'s anti-SLAPP statute), with Edward Lewis Tobinick, MD, 848 F.3d at 944–45 & n.8 (applying California's anti-SLAPP statute, which allowed a special motion to strike, where the appellants waived their challenge to its application in the district court), and Adelson v. Harris, 774 F.3d 803, 809 (2d Cir. 2014) (holding that mandatory fee shifting provision in Nevada's anti-SLAPP scheme applied in federal court).

Notwithstanding the foregoing and without waiving any argument that the statute does not apply in this action on the above stated procedural and substantive grounds, SLAPP (anti-strategic lawsuit against public participation) is a defense in which a person or entity claims that a lawsuit is "without merit" **and** filed "primarily because" the person or entity engaged in the exercise of a right protected by the First Amendment to the U.S. Constitution. § 768.295(3), Fla. Stat.

Defendant cannot meet the criteria for SLAPP and any effort made toward this showing is woefully deficient.  He cannot meet either or the criteria and raising

this issue in this case is frivolous. Falsely accusing Plaintiff of blackmail, intimidation and extortion and that she was associated with "racketeering, political corruption, abuse of power, and misuse of taxpayer money at the highest levels of DFS and other crimes, and publishing those false accusations throughout the government and the media, is not "without merit" so Defendant does not even get out of the door in showing that the SLAPP statute applies here. See, e.g., The Florida Senate Committee on Judiciary, Issue Brief 2009-332.

Wherefore, Defendant's Motion to Dismiss should be denied.

Respectfully submitted:

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF FONT AND WORD COUNT

I HEREBY CERTIFY that there are 5581 words in this response and that it is typed in 14 point font.

/s/ Marie A. Mattox
Marie A. Mattox

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on counsel of record by eportal this 16th day of October 2020.

/s/ Marie A. Mattox
Marie A. Mattox