## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

KIMBERLY GRIPPA,

      *Plaintiff*,

v.                        **CASE NO.: 4:20cv457-MW/MAF**

RONALD RUBIN,

      *Defendant*.

_____/

## ORDER DENYING MOTION TO DISMISS

This Court has considered, without hearing, Defendant's Motion to Dismiss. ECF No. 4. In the motion, Defendant seeks to dismiss Plaintiff's single count Amended Complaint, ECF No. 1-2, at 18–24 ("Am. Compl."), for failure to state a claim upon which relief can be granted. For the reasons provided below, the motion is **DENIED**. However, as explained below, certain statements on which Plaintiff relies on for her lawsuit cannot be a basis for a defamation claim.

## I

This Court accepts the allegations in the Amended Complaint as true and construes them in the light most favorable to Plaintiff. *See Hunt v. Amico Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). "To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plaintiff's allegations must amount to 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555).

In a motion to dismiss, this Court is usually bound by the four corners of a complaint. If it considers materials outside the complaint, such as the attachments to the motion to dismiss, this Court "generally must convert a motion to dismiss into a motion for summary judgment." *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005). But that is not always the case. "[T]he court may consider a document attached to a motion to dismiss without converting the motion [to dismiss] into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Id.* at 1276.

In his motion, Defendant attaches three exhibits. First is Defendant's letter that he provided to state investigators in May 2019. ECF No. 4-1. Second is a state court complaint that Defendant filed against R. Paul Mitchell. ECF No. 4-2. Third is an email Defendant sent to Governor DeSantis and Chief Inspector General Malinda Miguel on June 21, 2019. ECF No. 4-3. These exhibits are referenced in Plaintiff's Amended Complaint. Am. Compl. ¶ 13 ("Defendant has filed several lawsuits

(including Case No. 2019 CA 002535) wherein GRIPPA is listed as a co-conspirator of the 'enterprise' that Rubin claims. . . ."); ¶ 15 ("Rubin, through counsel, sent emails to Governor Ron DeSantis and Chief Inspector General Melinda Miguel, on June 21, 2019 in which he referenced his enterprise and the lawsuit identified in paragraph 13 above, in which Plaintiff was included as a named participant in this fictitious 'enterprise.' "); ¶ 16 ("Moreover, in a statement/letter that Rubin provided to state investigators on May 30, 2019 . . . .").

Indeed, the Amended Complaint directly quotes from some of the exhibits. *Compare* Am. Compl. ¶ 16 ("Rubin falsely stated that Plaintiff was not 'qualified to be the agency's enforcement director,' that Plaintiff 'had an air of entitlement and that [he] feared she would make [his] staff and other OFR employees miserable' " and "that Plaintiff had 'not even pretended [their] lunch was a real interview and that she was angry because [he] had treated it as a real interview.'") *with* ECF No. 4-1, at 4 ("I replied that I didn't say she was incompetent, but rather only that she was not qualified to be OFR's enforcement director"); 5 ("I told Mr. Mitchell that Ms. Grippa was so unpleasant, and had such an air of entitlement, that I feared she would make my staff and other OFR employees miserable"); ("I informed him that nothing I said to Ms. Grippa was inappropriate, that she had not even pretended our lunch was a real interview, and that she was angry because I had treated it as a real interview."). Moreover, Plaintiff's defamation claim is largely, if not entirely, based on the three

exhibits and information contained within them. Therefore, this Court finds that the exhibits attached in Defendant's motion are central to Plaintiff's claim. Plaintiff also does not challenge the authenticity of the documents. These documents are, therefore, undisputed. *See Taylor*, 400 F.3d at 1276.

For these reasons, this Court will, if it needs to, consider the exhibits attached in Defendant's motion.

## II

This is a single-count action for defamation. Plaintiff alleges that she is an experienced attorney who has had a prominent career. Am. Compl. ¶ 6. On March 21, 2019, Plaintiff interview with the Florida Office of Financial Regulation ("OFR") and the Department of Financial Services ("DFS") for the position of General Counsel. *Id.* ¶ 7.

During the interview, Defendant made numerous discriminatory statements and acted inappropriately based on Plaintiff's gender. *Id.* ¶ 8. Plaintiff reported the discriminatory statements and actions to Chief of Staff Ryan West. *Id.* ¶ 9. This incident, along with additional complaints filed against Defendant by females he treated similarly, resulted in an internal investigation into Defendant's behavior. *Id.* ¶¶ 10–11. The investigation determined that Defendant's conduct was severe and pervasive enough to find him guilty of official misconduct. *Id.* ¶ 11. The Governor's

office reviewed Defendant's behavior and, in conjunction with the Florida Cabinet, removed Defendant from office. *Id.* ¶ 12.

The Amended Complaint further includes statements that are the basis of Plaintiff's defamation claim. The first set of statements come from multiple lawsuits, including Case No. 2019 CA 002235, where Plaintiff was listed as a co-conspirator of the "enterprise" that Defendant claims blackmailed, intimidated, and extorted him and that Plaintiff was associated with racketeering, political corruption, abuse of power, and misuse of taxpayer money at the highest level of DFS. *Id.* ¶ 13. Plaintiff alleges that these statements are unsubstantiated, impertinent, scandalous, and false and Plaintiff states that she had no means of defending herself against these statements because she was not named as a party in the case. *Id.* ¶ 14.

The next set of statements come from emails that Defendant, through counsel, sent to Governor DeSantis and Chief Inspector General Melinda Miguel on June 21, 2019. *Id.* ¶ 15; ECF No. 4-3. The email referenced an "enterprise" and included a hyperlink to the lawsuit in which Plaintiff was named as a participant in the "enterprise." Am. Compl. ¶ 15. Plaintiff alleges that these statements are false and disparaging. *Id.*

Finally, the third set of statements come from a letter Defendant provided to state investigators in May 2019. *Id.* ¶ 16; ECF No. 4-1. The letter was provided to, among others, the Office of the Inspector General within DFS and to FLAPOL, a

publication through floridapolitics.com. In the letter, Defendant stated that Plaintiff was not "qualified to be the agency's enforcement director," that Plaintiff "had an air of entitlement and that he feared she would make his staff and other OFR employees miserable." *Id.* He further stated that Plaintiff had "not even pretended their lunch was a real interview and that she was angry because he had treated it as a real interview." *Id.* Plaintiff claims these statements were false and constitute defamation per se or per quod. *Id.*

### III

Under *Erie*, this Court applies Florida's substantive law for defamation claims. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). "Defamation under Florida law has these five elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity of the matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statements must be defamatory." *Id.*

"True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Id.* "Under Florida law, a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." *Id.* "Mixed expression of opinion occurs when an

6

opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the publication or assumed to exist by the parties to the communication." *Id.*

"Whether the statement is one of fact or opinion and whether of fact is susceptible to defamatory interpretation are questions of law for the court." *Id.* at 1262–63. In making this assessment, "a court should construe statements in their totality, with attention given to any cautionary terms used by the publisher in qualifying the statement." *Id.* at 1263.

### 1. Statements in the Lawsuits

Defendant argues that Defendant's statements that appeared in a lawsuit (2019 CA 002535)[1] cannot be a basis for a defamation claim because they are absolutely privileged. In Florida, "[t]he law has long recognized that judges, counsel, parties, and witnesses should be absolutely exempted from liability to an action for defamatory words published in the course of judicial proceeding, regardless of how false or malicious the statements may be, so long as the statements bear some relation to or connection with the subject of inquiry." *DelMonico v. Traynor*, 116 So. 3d 1205, 1211 (Fla. 2013). This privilege is referred to as a judicial or litigation

---

[1] Defendant does not move to dismiss based on statements that appear in other lawsuits alleged in the Amended Complaint. To the extent it does, Defendant does not attach these lawsuits and, therefore, this Court cannot determine whether the statements bear some relation to the subject of the inquiry. While Defendant asserts that the attached lawsuit is the only lawsuit Defendant filed that names Plaintiff as a member of the enterprise, this Court cannot consider such assertion at this stage of the litigation.

privilege. "Florida's litigation privilege is an affirmative defense." *Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1112 n. 21 (M.D. Fla. 2019). As such, Defendant has the burden of proving its applicability. *Id.* And although an affirmative defense, Florida courts have made it clear that litigation privilege "may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2004).[2]

Plaintiff takes issue with the fact that Defendant alleged that Plaintiff was an unnamed coconspirator in a civil lawsuit where the coconspirators were accused on running an "enterprise" that blackmailed, intimidated and extorted him, and that she was associated with the racketeering, political corruption, abuse of power, and misuse of taxpayer money at the highest level of DFS. But the statements Plaintiff alleges as defamatory are relevant to Defendant's claim in the state court lawsuit. ECF No. 4-2. Indeed, the lawsuit is entirely premised on the fact that the "enterprise" engaged in criminal activity and sought to defame him. And while accusing Plaintiff

---

[2] Plaintiff cites to a hodge-podge of inapplicable cases. For example, Plaintiff cites several cases that have limited the application of litigation privilege to various causes of action other than defamation. ECF No. 7, at 6 (citing *Debrincat v. Fischer*, 217 So. 3d 68 (2017), where the Florida Supreme Court held that litigation privilege does not provide immunity from claims for malicious prosecution); ECF No. 7, at 7 (citing *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197 (11th Cir. 2018), where the court held that Florida's litigation privilege would not immunize a defendant from a breach of contract claim). These lawsuits do not do away with the long list of cases that apply litigation privilege to defamation suits. *See, e.g.*, *Gursky Ragan, P.A. v. Ass'n of Poinciana Vills.*, Inc., --- So. 3d ---, 2020 WL 7635829 (Fla. 3d DCA 2020).

of blackmail or other criminal activity may be false and malicious, it is nonetheless protected by litigation privilege if it *bears some relationship* to the subject matter of the lawsuit. This Court finds that the statements implicating Plaintiff as part of an enterprise not only bears some relation to the state court lawsuit, but the state court lawsuit is entirely premised on these statements. As such, the allegedly defamatory statements that appear in the lawsuit, 2019 CA 002535, are absolutely privileged.[3]

### 2.  Statements in the Letter Sent to Governor and Chief Inspector General

Defendant next argues that the letters sent to the Governor and the Chief Inspector General cannot be the basis for a defamation claim because the letters were not about Plaintiff. ECF No. 4, at 11. That is not accurate. The letters expressly reference the lawsuit in which Plaintiff was named as a part of an "enterprise" and also included the lawsuit in the letters as a hyperlink. This Court, therefore, finds Defendant's argument unpersuasive.

Defendant also argues that the letters are subject to qualified privilege because they requested an investigation for misuse of public office. Assuming, without deciding, that the letters are subject to qualified privilege, a plaintiff may overcome

---

[3] In an attempt to throw legal arguments at the wall and see what sticks, Plaintiff cites to a number of cases that deal with statements made outside the courtroom and formal discovery or statements that are necessarily preliminary to judicial proceedings. *See* ECF No. 7, at 7 (citing *DelMonico v. Traynor*, 116 So. 3d 1205, 1218 (2013), where the court stated that absolute privilege does not apply where an attorney steps outside the courtroom and formal discovery process to investigate a claim.), 10 (citing multiple cases that deal with conduct that is necessarily preliminary to judicial proceedings). These cases are inapplicable for the simple reason that the statements complained of appear in a complaint filed in a state court proceeding.

qualified privilege by pleading express malice. *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1268 (S.D. Fla. 2004). "Express malice has been defined by the Florida courts as 'ill will, hostility *and* evil intention to defame and injure.' " *Id.* (citing *Lewis v. Evans*, 406 So. 2d 489, 492 (Fla. 2nd DCA 1981)). "The Florida courts have further stated, 'the gravamen of express malice is the abuse of privilege occasion by improper motives on the part of the speaker.' " *Id.* (citing *Nodar v. Galbreath*, 462 So. 2d 803, 811 n.8 (Fla. 1984)).

Plaintiff, here, has sufficiently pled express malice. Specifically, Plaintiff alleged that she complained about Defendant's discriminatory actions and statements to the Chief of Staff for the DFS. Am. Compl. ¶¶ 8–9. This complaint led to Defendant's removal from his position. *Id.* ¶¶ 11–12. After his removal, Defendant sent letters to the Governor and the Chief Inspector General accusing Plaintiff of being part of an enterprise. Taken together, these allegations show that Defendant retaliated against Plaintiff for complaining about his improper behavior. In other words, Defendant had ill will and hostility towards Plaintiff because she filed a complaint against him, and this hostility led Defendant to send letters to the Governor and the Chief Inspector General. As such, this Court finds that Plaintiff has sufficiently pled facts to show express malice and overcome qualified privilege.

For these reasons, Defendant's motion as it relates to statements made in the letters sent to the Governor and the Chief Inspector General is denied.

### 3.  *Statements in the Letter Provided to State Investigators*

Plaintiff alleges that certain statements Defendant made in his letter to the state investigators were defamatory. Specifically, Plaintiff takes umbrage with Defendant's statement that she was not "qualified to be the agency's enforcement director," "had an air of entitlement and that [Defendant] feared she would make [his] staff and other OFR employees miserable," and "[had] not even pretended [their] lunch was a real interview and that she was angry because [Defendant] had treated it as a real interview." Am. Comp. ¶ 16; ECF No. 4-1. Defendant argues that these statements are statements of pure opinion and not statements of fact. This Court agrees.

First, all of the statements Plaintiff complains of are subjective assessment of Defendant as an interviewer and therefore not readily capable of being proved true or false. *See Wells*, 879 F.3d at 1262. For example, Defendant's statement that Plaintiff "had an air of entitlement" is his assessment of the interviewee—Plaintiff— as an interviewer based on her behavior during the interview. Defendant's other statement that Plaintiff did not pretend that the lunch was a real interview and that she was angry Defendant had treated it as a real interview is also Defendant's subjective assessment of how the interview was going. Indeed, Defendant clearly states in his statement to the investigator that the "interview did not go well from *my*

*perspective*," thereby informing a reasonable reader that the conclusions contained in the letter were his opinions, from his perspective. *See Wells*, 879 F.3d at 1264 ("Notably too, the Report included several cautionary statements that inform a reasonable reader that the conclusions contained therein are opinions.") Same is true for Defendant's statement that he did not believe Plaintiff was "qualified to be the agency's enforcement director" is his subjective assessment as a hirer of the hiree.

Moreover, Defendant laid out the basis for his allegedly defamatory statements in the letter to the state investigators. Defendant's statements that Plaintiff had an air of entitlement and had not even pretended that the interview was real is supported by statements in the letter indicating that Plaintiff put the OFR organization on the table, stated that she would like to be a deputy commissioner and then, when told that Defendant was reorganizing the agency to convert that position to a chief of staff position, Plaintiff declared that she would take the job of enforcement director. ECF No. 4-1, at 3–4. Defendant's statement that Plaintiff was not qualified for the enforcement director job is also supported by the statements in the letter. Specifically, Defendant stated that based on Plaintiff's resume, "enforcement director was the one job she could not be expected to perform." ECF No. 4-1, at 4. He further stated that he explained to Plaintiff that the role of enforcement director would require an experienced litigator with some combination

of "expertise in securities law, consumer finance law, criminal law and banking law," whereas Plaintiff only had administrative law experience. ECF No. 4-1, at 4.

Because Defendant's statements in the letter are his subjective assessments and because they are supported by facts set forth in the letter, making them pure opinions, this Court finds that these statements are protected from a defamation action. As such, Defendant's motion as it relates to the statements made in the letter to the state investigator is granted.

## IV

Defendant seeks fees and costs pursuant to Florida's anti-SLAPP law. This Court assumes, without deciding, that Florida's anti-SLAPP statute applies in diversity actions. Florida's anti-SLAPP statute prohibits bringing a lawsuit that is without merit and is filed primarily because defendant has exercised the constitutional right of free speech in connection with a public issue. § 768.295(3), Fla. Stat. As explained in this Order, Plaintiff's lawsuit is not without merit. For these reasons, Defendant is not entitled to fees and costs pursuant to Florida's anti-SLAPP law.

## V

This Court dismisses counts and not theories on which the counts rest. Here, Plaintiff's single count of defamation rests on multiple incidents of defamatory statements. While this Court holds that some of the incidents of allegedly defamatory

13

statements cannot be a basis for a defamation claim, this Court cannot dismiss the claim because some statements survive. As such, Plaintiff's defamation count survives Defendant's motion to dismiss. But Plaintiff cannot rely on statements made in the state court lawsuit, 2019 CA 002535, and statements made in a letter to state investigators to state a claim for defamation. For the reasons provided, Defendant's motion is **DENIED**.

While Defendant does not currently have a counsel, ECF No. 21, the motion to dismiss was fully briefed before Defendant's counsel withdrew. As such, this Court finds it prudent to rule on the motion to dismiss. As this Court indicated in its Order Granting Motion to Withdraw, ECF No. 21, this Court will reset the deadlines once Defendant obtains new counsel. Defendant has until March 5, 2021, to obtain new counsel.  This includes deadlines for any motions for reconsideration related to this Order.  Stated otherwise, this matter is stayed until March 5, 2021.  The Clerk is directed to set this matter for a telephonic hearing the week of Monday, March 8, 2021, so the deadlines can be reset.

**SO ORDERED on February 22, 2021.**

**s/Mark E. Walker**
**Chief United States District Judge**