UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**KIMBERLY GRIPPA,**
 Plaintiff,

v.          Case No. 4:30-cv-457-MW/MAF

**RONALD RUBIN,**
 Defendant.

_____/

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

The Defendant, Ronald Rubin, through his counsel, files his Answer and Affirmative Defenses to the Plaintiff's, Kimberly Grippa, Amended Complaint.

### NATURE OF THE ACTION

1. This is a civil action seeking monetary damages, declaratory judgment, and legal, equitable, and injunctive relief against Defendant. This is an action brought under the common law of the State of Florida.

**ANSWER: Admitted that the foregoing is what the Plaintiff purports to seek in her amended complaint and that the action is brought under the common law of the state of Florida.**

2. This is an action involving claims which are, individually, in excess of $30,000.

**ANSWER: Admitted for jurisdictional purposes.**

## PARTIES

3. At all times pertinent hereto, Plaintiff, KIMBERLY GRIPPA, has been a resident of the state of Florida. She is thus sui juris.

**ANSWER: Admitted.**

4. At all times pertinent hereto, Defendant, RONALD RUBIN, individually, was a resident of the State of Florida. He is thus sui juris.

**ANSWER: Denied.**

## CONDITIONS PRECEDENT

5. To the extent required, Plaintiff has complied with all conditions precedent.

**ANSWER: Without knowledge, therefore denied.**

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff, KIMBERLY GRIPPA, is an attorney with over 22 years' legal work experience. She has a model work history including: Legal Counsel for a state college, Associate Attorney for a prominent law firm, Cabinet Aide at the Florida Department of State, a Faculty member at FSU College of Law, and other prominent positions.

**ANSWER: Without knowledge, therefore denied.**

7. On March 21, 2019, GRIPPA interviewed with the Florida Office

of Financial Regulation and the Department of Financial Services for the position of General Counsel with Defendant, Commissioner RONALD RUBIN, who is male.

**ANSWER: Denied. The lunch has been referred to as an "interview," but there was never a General Counsel job posted, the OFR General Counsel in March 2019 is still the General Counsel.**

8. Throughout the interview, Defendant made numerous discriminatory statements and inappropriate acts based on GRIPPA's gender.

**ANSWER: Denied.**

9. GRIPPA reported this in an email to Chief of Staff Ryan West on May 13, 2019.

**ANSWER: Without knowledge, therefore denied.**

10. GRIPPA learned that numerous additional complaints had been filed against Defendant by females who he treated similarly to her.

**ANSWER: Denied.**

11. As a result, an internal investigation was conducted into Defendant's behavior and determined that Defendant's conduct was sufficiently severe and pervasive to find him guilty of official misconduct.

**ANSWER: Admitted that an investigation was conducted. The outcome and findings of the investigation is denied. Moreover, the Defendant questions the legitimacy and intentions behind the investigation. The investigation was not internal, but for all intents and purposes was secretly directed by Jimmy**

3

**Patronis' investigator, Mike Shoaf.**

12. The Governor's office was also involved in the review process of Defendant's behavior and in conjunction with the Florida Cabinet, removed Defendant from office.

**ANSWER: Denied. The Governor's Office reviewed the Investigation Report, not the Defendant's behavior. Admitted that, based on the Investigation Report, the Defendant was removed from office.**

13. Defendant has also filed several lawsuits (including Case No. 2019 CA 002535) wherein GRIPPA is listed as a co-conspirator of the "enterprise" that Rubin claims blackmailed, intimidated and extorted him and that she was associated with "racketeering, political corruption, abuse of power, and misuse of taxpayer money at the highest levels of DFS".

**ANSWER: Denied that "several" lawsuits have been filed. The pleadings in the lawsuit speak for themselves and no response is required.**

14. Defendant has not officially named GRIPPA as a party in the case and as such she has no means of defending herself against the unsubstantiated, impertinent, scandalous, and false accusations Defendant has cast upon her in an attempt to swing the spotlight away from himself and his behavior.

**ANSWER: Admitted that Grippa is not a defendant in Case No. 2019 CA 002535. The remainder is denied.**

15. Subsequent to the complaints by Plaintiff against Rubin referenced in paragraph 9 above and on the day the lawsuit referenced above was filed, Rubin, through counsel, sent emails to Governor Ron DeSantis and Chief Inspector General Melinda Miguel, on June 21, 2019 in which he referenced his "enterprise" and the lawsuit identified in paragraph 13 above, in which Plaintiff was included as a named participant in this fictitious "enterprise." The lawsuit that Rubin filed referenced above was included as a hyperlink to the email to Miguel. In the emails to both DeSantis and Miguel on June 21, 2019, Rubin detailed improper, unethical and seemingly unlawful conduct on the part of Plaintiff. Thus, Rubin, through his counsel, has publicly and falsely disparaged Plaintiff in his communication to Governor DeSantis and Miguel.

**ANSWER: The e-mails cited speak for themselves. Denied as to the remainder and as to any allegation that differs from the content of the e-mails.**

16. Moreover, in a statement/letter that Rubin provided to state investigators on May 30, 2019, presumably including without limitation the Office of the Inspector General within the Department of Financial Services and to other persons/entities including without limitation to FLAPOL, a publication through floridapolitics.com, Rubin falsely stated that Plaintiff was not "qualified to be the agency's enforcement director," that Plaintiff "had an air of

entitlement and that [he] feared she would make [his] staff and other OFR employees miserable." In his May 30, 2019 statement/letter, incorporated into the FLAPOL article of statewide if not national circulation, Rubin further falsely stated that Plaintiff had "not even pretended [their] lunch was a real interview and that she was angry because [he] had treated it as a real interview." These comments constitute defamation *per se* or *per quad.*

**ANSWER: The document referenced speaks for itself. Denied to the extent the allegations differ from the referenced document.**

17. Media and press coverage of Defendant's accusations has led to a character assassination of GRIPPA and her professional reputation. None of the allegations against her are true, supported by evidence, and are nothing more than a scandalous attempt to shift focus from Rubin's discriminatory and scandalous behavior against women.

**ANSWER: Denied.**

18. GRIPPA has since been denied job opportunities due to the defamatory allegations against her by Defendant.

**ANSWER: Denied.**

19. Defendant was aware or should have been aware that Plaintiff was in the process of attempting to obtain employment and was entertaining multiple interviews with numerous employers when he made the scandalous and false

6

allegations against Plaintiff and knew or should have reasonably knew that making such statements would hinder her chances of gaining such employment and/or ruin her reputation in the community.

**ANSWER: Denied.**

## COUNT I
## DEFAMATION
## (Against Defendant RUBIN)

20. Paragraphs 1 through 19 are re-alleged and are incorporated herein by reference.

**ANSWER: The answers to paragraphs one through nineteen are incorporated herein by reference.**

21. This count sets forth a claim against Defendant RUBIN for defamation.

**ANSWER: Denied.**

22. Defendant RUBIN, individually, or through counsel, published and/or caused to be published or allowed to be published false statements about Plaintiff to third parties as set forth above, in part.

**ANSWER: Denied.**

23. These statements made by Defendant RUBIN were malicious and intended to harm Plaintiff. Alternatively, Defendant RUBIN was negligent in

7

publishing these statements, and/or published these statements with knowledge that they were false and/or published these statements with reckless disregard as to their falsity.

**ANSWER: Denied.**

24. The statements referred to above directly and proximately caused harm to Plaintiff's reputation in the community, subjected Plaintiff to distrust, ridicule, contempt or disgrace and/ or tended to injure Plaintiff in Plaintiff's trade or profession.

**ANSWER: Denied.**

25. These statements have deterred others from associating with Plaintiff and are actionable on their face. The communications made by Defendant attributed conduct, characteristics, and/ or conditions upon Plaintiff incompatible with the exercise of Plaintiff's lawful business, trade, profession and office.

**ANSWER: Denied.**

26. Alternatively, Defendant engaged in slander per quod and Plaintiff is entitled to damages as a consequence thereof.

**ANSWER: Denied.**

27. Defendant published these statements in bad faith.

8

**ANSWER: Denied.**

28. As a result of the falsity of the statements made by Defendant RUBIN as set forth above and the publication thereof, Plaintiff has suffered damages which include, without limitation, special and general damages. Defendant engaged in slander per se which is actionable on its face and general damages are presumed.

**ANSWER: Denied.**

29. Alternatively, Defendant engaged in slander per quod and Plaintiff is entitled to damages as a consequence thereof. The communications made by Defendant RUBIN imputed conduct to Plaintiff which is incompatible with her functioning as a member of her community and occupation. Few good, decent or honorable people would want to have business relationships with a person or have a person serve them in a personal or professional capacity with the qualities attributed to Plaintiff by Defendant.

**ANSWER: Denied.**

30. As a result of the defamatory statements, Plaintiff has suffered extreme humiliation, embarrassment, and mental anguish, pain and suffering, inconvenience, lost capacity for enjoyment of life, loss of business and profits, loss of reputation, good standing in the community and other tangible and

intangible damages. These damages have occurred in the past, present and are reasonably expected to continue into the future. Plaintiff is entitled to equitable/injunctive relief and to punitive damages.

**ANSWER: Denied.**

## **AFFIRMATIVE DEFENSES**

31. As his first affirmative defense, Ronald Rubin states that the complained of "defamatory" statements are true, and thus do not constitute actionable defamation.

32. As his second affirmative defense, Ronald Rubin states that the complained of "defamatory" statements were merely statements of opinion, and thus do not constitute actionable defamation.

33. As his third affirmative defense, Ronald Rubin states that the complained of "defamatory" statements were invited by the Plaintiff, and thus do not constitute actionable defamation.

34. As his fourth affirmative defense, Ronald Rubin states that the complained of "defamatory" statements were made in the scope of his official duties and, therefore, enjoy an absolute privilege under Florida law.

35. As his fifth affirmative defense, Ronald Rubin states that the complained of "defamatory" statements are protected by the litigation privilege

and thus are not actionable.

36. As his sixth affirmative defense, Ronald Rubin states that the complained of "defamatory" statements are protected by the qualified privilege doctrine and the conditional privilege (fair comment) doctrine.

37. As his seventh affirmative defense, Ronald Rubin states that the complained of "defamatory" statements were made without malice and are, therefore, not actionable.

38. As his eighth affirmative defense, Ronald Rubin states that the relief sought by the Plaintiff, including, but not limited to, attorney fees, is improper for a defamation claim under Florida law.

WHEREFORE, Defendant, Ronald Rubin, demands judgment in his favor, for costs, and for such other relief as the Court deems just.

Dated: March 24, 2021.

Respectfully submitted,

Defendant,
By counsel.


*/s/ James L. Kauffman*
James L. Kauffman (Fla. Bar No. 12915)
BAILEY & GLASSER, LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 342-2103
Email: jkauffman@baileyglasser.com
Secondary: vpierre@baileyglasser.com


Nicole L. Ballante (Fla. Bar No. 0125356)
BAILEY & GLASSER, LLP
360 Central Avenue, Suite 1500
St. Petersburg, FL 33701
Telephone: (727) 894-6745
Facsimile: (727) 894-2649
Email: nballante@baileyglasser.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2021, a copy of the foregoing document was filed electronically. Notice of this filing will be sent be e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ James L. Kauffman*
James L. Kauffman