## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**KIMBERLY GRIPPA,**

      **Plaintiff,**

**v.**                                **Case No.: 4:20cv457-MW/MAF**

**RONALD RUBIN,**

      **Defendant.**

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................1

Statement of Facts ........................................................................................4

Summary Judgment Standard .......................................................................7

Argument......................................................................................................7

I.  Grippa's claim is based entirely on privileged statements from Rubin's Complaint. ........................................................................................7

II.  Grippa's claim depends upon vicarious liability, which Grippa failed to plead and is contradicted by the evidence. ......................................9

III.  Alternatively, Tein's letters are protected by the qualified privilege that Grippa cannot overcome by a demonstration of express malice..................11

    A.  The Qualified Privilege Applies...........................................................11

    B.  Grippa Cannot Demonstrate Express Malice ......................................13

IV.  Grippa has no evidence of proximate causation...........................................15

V.  Grippa has no actual damages ........................................................................16

VI.  Conclusion ......................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ball v. D'Lites Enterprises, Inc.*,
   65 So.3d 637 (Fla. 4th DCA 2011)....................................................................8

*Cape Publications, Inc. v. Reakes*,
   840 So.2d 277 (Fla. 5th DCA 2003)................................................................15

*Celotex Corp.v. Catrett*,
   477 U.S. 317 (1986).........................................................................................7

*Chestnut Assoc., Inc. v. Assurance Co. of America*,
   17 F.Supp.3d 1203 (M.D. Fla. 2014)..............................................................10

*Debose v. University of South Fla.*,
   178 F.Supp.3d 1258 (M.D. Fla. 2016)..............................................................9

*General Asphalt Co., Inc. v. Bob's Barricades, Inc.*,
   22 So.3d 697 (Fla. 3rd DCA 2009)...................................................................9

*Goldschmidt v. Holman*,
   571 So.2d 422 (Fla. 1990) .............................................................................10

*Jarzynka v. St. Thomas Univ. of Law*,
   310 F. Supp. 2d 1256 (S.D. Fla. 2004)........................................................2, 13

*Larreal v. Telemundo of Florida, LLC*,
   489 F. Supp. 3d 1309 (S.D. Fla. 2020)..............................................................7

*Nodar v. Galbreath*,
   462 So. 2d 803 (Fla. 1984) ............................................................................12

*Pomfret v. Atkinson*,
   137 So. 3d 1161 (Fla. 4th DCA 2014).......................................................13, 14

*Regions Bank v. Kaplan*,
   8:12-CV-1837-T-17MAP, 2013 WL 1193831 (M.D. Fla. Mar. 22,
   2013) ..........................................................................................................11, 12

*Stanfill v. State*,
    384 So.2d 141 (Fla. 1980) ................................................................8

*Stewart v. Sun Sentinel Co.*,
    695 So.2d 360 (Fla. 4th DCA 1997)...............................................8, 9

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018) ......................................................16

*Wilson v. Jacks*,
    310 So.3d 545 (Fla. 1st DCA 2021) ...............................................10

**Statutes**

Fla. Stat. §14.32(2)..........................................................................12

Fla. Stat. §775.082(4)(a) ................................................................11

Fla. Stat. §836.01 ...........................................................................11

**Rules**

Fed. R. Civ. P. 56(c)..........................................................................7

Rule 4-1.2(d) Regulating the Florida Bar .........................................11

## INTRODUCTION

This case involves a single count of defamation based on two letters that Defendant Ronald Rubin's ("Rubin") former counsel, Michael Tein ("Tein") sent to Florida Governor Ron DeSantis ("DeSantis") and Inspector General Miranda Miguel ("Miguel") via e-mail.[1] The letters requested an investigation into a potential misuse of public office by CFO Jimmy Patronis ("Patronis") and refer to an unnamed group of people as part of Patronis' "inner circle" and "his enterprise."

To determine whether Plaintiff Kimberly Grippa ("Grippa") is part of the group, the reader must review Rubin's Complaint against Paul Mitchell, which was filed in Leon County Circuit Court at Case Number 2019-CA-002535 and hyperlinked in Tein's letters. The Complaint was filed on the same day that the letters requesting an investigation were sent to DeSantis and Miguel. The Court has already ruled that the statements in Rubin's Complaint are privileged and cannot be used as a basis for Grippa's defamation claim. ECF No. 22 at 9.

Tein's e-mailing of the letters with hyperlinks to the Complaint are no different from an attorney sending a copy of a filed Complaint to a reporter, which does not create defamation liability under Florida law. Notwithstanding the litigation

---

[1] Both the Plaintiff's Complaint and Order on Defendant's Motion to Dismiss, mistakenly state that Tein sent the letters *after* the investigation concluded and Rubin was dismissed. *See* Compl. ¶¶11-12, ECF No. 6 at 10. Not so. The letters were sent on June 21, 2019, during the pendency of the investigation, which remained open until July 25, 2019, when the cabinet removed Rubin as Commissioner of the Office of Financial Regulation ("OFR"). ECF 4-2.

privilege, the letters are subject to a qualified privilege as related to an ongoing state investigation, which may only be overcome by Grippa's demonstration that the letters were sent with express malice by Rubin.

Express malice is "ill will, hostility and evil intent" and "the gravamen of express malice is the abuse of the privilege occasion by improper motives *on the part of the speaker.*" *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1268 (S.D. Fla. 2004) (citations omitted). Grippa cannot meet her burden under Florida law, which is to show more than a mere possibility of express malice, but that the *primary intent* of the Tein letters was to defame Grippa.

Furthermore, Rubin did not author the letters, so the "speaker" was Tein. Therefore, Grippa's claim depends upon attributing Tein's statements to Rubin, but no legal theory is available to Grippa to support such an attribution. First, Florida law requires a tort based on vicarious liability to be specifically pleaded, and Grippa never specifically pleaded vicarious liability. Second, vicarious liability for a principal can only occur if the agent was acting within the scope of agency. Libel is a criminally punishable misdemeanor in Florida, and Florida Bar Rules do not allow an attorney to assist a client in committing a crime. Therefore, even if Tein's letters had been libelous, sending them could not have been within the scope of his agency as Rubin's attorney.

Moreover, Grippa cannot show that Rubin had an improper motive of ill will, hostility, and evil intent regarding Tein's statements because Rubin was unaware of Tein's letters before they were sent. Grippa's burden is not a mere possibility of improper motive, but that the primary purpose was an intent to defame her. But the Tein's letters on their face state a legitimate purpose, which was to ask the Governor's Inspector General to assume oversight of the government investigation, not to defame Grippa, who is not specifically mentioned in the letters. Also, Rubin reasonably relied upon Tein's professional judgment in determining what actions to take in the course of his representation of Rubin. There is no evidence that *Rubin* either directed the letters, authored them, or caused them to be sent with the primary motive to defame Grippa.

Additionally, Grippa has no evidence that the letters proximately caused her damage. Tein privately sent the letters to DeSantis and Miguel on June 21, 2019, the same day Rubin's Complaint was filed. Six days later, Grippa wrote Ryan West to decline the Department of Financial Services' ("DFS") offer of employment. Grippa's e-mail did not mention Tein's letters, but it did discuss media coverage of Rubin's Complaint. Grippa cannot connect her alleged damages to the Tein letters and show proximate causation apart from any alleged harm caused by the press reporting on Rubin's Complaint.

Lastly, Grippa has no actual damages. Prior to the complained defamation, Grippa secured an offer of employment with DFS as a deputy general counsel for the Office of the Insurance Consumer Advocate ("ICA"), but Grippa rejected the offer by e-mail on June 27, 2019. Grippa's supervisor-to-be, Peter Penrod, testified that had Grippa not rejected the offer, she would have been welcomed to work at the ICA. Grippa voluntarily rejected the exact type of employment that she claims Tein's letters prevented her from obtaining. Her self-inflicted unemployment undercuts her claim to actual damages.

## STATEMENT OF FACTS

1.     On or about June 10, 2019, Rubin hired Tein to represent him in an ongoing DFS investigation concerning allegations against Rubin while he was Commissioner of the Florida Department of Financial Services ("DFS"). ECF No. 109-1, Rubin Decl. ¶2.

2.     At the same time, Rubin also hired Tein to represent him in a potential civil claim against lobbyist R. Paul Mitchell ("Mitchell"). *Id.*

3.     Rubin hired Tein to replace his prior attorneys at Coffey Burlington. *Id.* ¶3.

4.      Rubin relied upon Tein to take those actions necessary to his representation. *Id.* ¶4.

5. On June 21, 2019, Tein filed a Complaint against Mitchell alleging an ongoing pay-to-play scheme in Patronis' office and, on the same day, e-mailed letters to Governor DeSantis and Inspector Miguel requesting an investigation into the same ("Tein letters"). ECF No. 109-3, ECF No. 109-4.

6. The letters recited the allegations in the Complaint and included hyperlinks to the filed Complaint. *Id.*

7. Rubin was unaware of the letters sent by Tein prior to Tein sending them. ECF No. 109-1 ¶¶5-6.

8. Rubin did not author, contribute, direct, or approve the contents of the letters prior to Tein e-mailing them. *Id.* ¶6.

9. Grippa was offered employment with DFS as a deputy general counsel for ICA, with a special exception to increase her annual salary to $100,000. ECF No. 109-5 and 109-6.

10. Grippa was made an offer of employment by DFS on May 10, 2019. ECF No. 109-6.

11. Grippa's immediate supervisor was to be Peter Penrod. ECF No. 109-9 at 29:23-25.

12. Prior to being offered the position, Grippa never interviewed with Penrod. *Id.* at 17:19-24.

13.    Peter Penrod approved Grippa's salary for the deputy general counsel as $100,000, above the minimum salary of $64,000. *Id.* at 23:9-19; ECF No. 109-5.

14.    Grippa was to start on July 1, 2019, in the position of deputy general counsel. ECF No. 109-9 at 29:18-20; 109-6.

15.    On June 27, 2019, Grippa e-mailed DFS Chief of Staff Ryan West ("West") declining the offer of employment from DFS. ECF No. 109-7.

16.     Grippa's e-mail to West stated "Mr. Rubin has sent out numerous press releases through a professional PR firm to slander my good name" but did not mention the Tein letters. *Id.*

17.    Grippa testified that she thinks that she became aware of Tein's letters after she read news articles about them but could not identify the specific news articles she read or produce copies of the articles she read. ECF No. 109-8 at 241:11-242:10.

18.    Grippa could only say that she read news articles that reported Tein's statements with a link to Rubin's Complaint. ECF No. 109-8 at 243:22-244:6.

19.    Penrod testified that had Grippa not declined the DFS job, she would have been welcomed to start on July 1, 2019, despite any allegations from Rubin. ECF No. 109-9 at 43:11-22, 44:2-6.

20.     The Court's Order on the Motion to Dismiss limited Grippa's basis for the defamation claim to the two letters Tein sent to DeSantis and Miguel. ECF No. 22.

<div align="center">

**SUMMARY JUDGMENT STANDARD**

</div>

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp.v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). "Because of the importance of free speech, summary judgment is the 'rule,' and not the exception, in defamation cases." *Larreal v. Telemundo of Florida, LLC*, 489 F. Supp. 3d 1309, 1318 (S.D. Fla. 2020).

<div align="center">

**ARGUMENT**

</div>

## I.     Grippa's claim is based entirely on privileged statements from Rubin's Complaint.

Tein's letters to DeSantis and Miguel allege "misuse of public office by CFO Patronis and his inner circle" and also state "[i]n a lawsuit filed today, Mr. Rubin details improper, unethical and perhaps unlawful conduct on the part of Mr. Patronis and his enterprise…" ECF No. 109-3 and 109-4. Tein's letters do not identify Grippa by name or inuendo – they contain no statements (defamatory or otherwise) about Grippa. *See id.* One must read Rubin's Complaint to see Grippa's name, much less understand Tein's use of the terms "inner circle" and "enterprise."

Grippa's theory is that the Tein letters' reference to the Complaint with a hyperlink is a different type of communication that is not afforded immunity. But a Florida appellate court has viewed similar circumstances and determined that providing a copy of a pleading in a third-party communication is entitled to absolute immunity. *See Stewart v. Sun Sentinel Co.*, 695 So.2d 360, 362 (Fla. 4th DCA 1997) (attorney who gave a copy of a notice of claim to a reporter "as the trial court correctly found, was entitled to absolute immunity afforded judicial statements made in the course of judicial proceedings...")[2] Further, the Florida 4th DCA, in interpreting *Stewart*, explained that "the publication of the complaint or those documents which would be public records when filed in the Court would be covered by the judicial absolute immunity, because these documents *are* part of the judicial proceeding." *Ball v. D'Lites Enterprises, Inc*., 65 So.3d 637, 641 (Fla. 4th DCA 2011). Once filed, the Complaint was a matter of public record and the publication of the Complaint by Tein through the letters is also afforded absolute immunity.

The alleged defamatory statement in this case is that "Grippa is part of an enterprise and inner circle that acted improperly, unethically and possibly unlawfully against Rubin." But the most important part of that statement – that Grippa is part of the enterprise/inner circle - can only be determined by reading the Complaint.

---

[2] Decisions by the Florida district courts of appeals represent the law of Florida unless and until they are overruled by the Florida Supreme Court. *Stanfill v. State*, 384 So.2d 141, 143 (Fla. 1980)

DeSantis, Miguel, or any other reader of the Tein letters could have obtained a copy of the Complaint from the Clerk of the Court. Just as in *Stewart,* the Tein letters recited allegations from a Complaint that was already a matter of public record, and those statements are afforded absolute immunity.

The Court has already determined that any allegedly defamatory statements in the Complaint are absolutely privileged. ECF No. 6 at 9. Since Grippa's name does not appear in Tein's letters and the litigation privilege prevents statements in the Complaint from being the basis for a defamation claim, Grippa has not identified any statements *by anyone* that can be the basis for a defamation claim against Rubin, *regardless of such statements' truth or falsity.*

## II.   Grippa's claim depends upon vicarious liability, which Grippa failed to plead and is contradicted by the evidence.

Grippa's allegations gloss over a key fact that Rubin did not author any of the statements in Tein's letters - and that her defamation claim must be based on vicarious liability. "Florida law is clear that in order to pursue a vicarious liability claim, the claimant must specifically plead it as a separate cause of action." *General Asphalt Co., Inc. v. Bob's Barricades, Inc*., 22 So.3d 697, 699 (Fla. 3rd DCA 2009) (citing *Goldschmidt v. Holman,* 571 So.2d 422 (Fla. 1990)); *Debose v. University of South Fla.,* 178 F.Supp.3d 1258, 1274 (M.D. Fla. 2016)(same). But Grippa did not bring a separate claim for vicarious liability in her complaint, never amended her complaint to add such a claim, and is precluded from avoiding final summary

judgment based on a theory of vicarious liability that was not specifically pleaded. *See Wilson v. Jacks*, 310 So.3d 545, 548 (Fla. 1st DCA 2021) (applying the principal in *Goldschmidt* that a claim of vicarious liability for tort claim must be specifically pled in Complaint to be considered in avoiding a summary final judgment). Rubin is entitled to summary judgment because Grippa never pleaded a separate claim of vicarious liability, upon which her theory of defamation depends.

Should the pleading deficiency be overlooked, Grippa may argue that she pleaded that Rubin sent the letters through his attorney, and that there is an assumption of agency in the attorney-client relationship. Even if that were generally true, the precise allegation would be that Rubin is liable for an intentional tort committed by his attorney agent. Under Florida law, "[t]here is no liability where the agent has stepped aside from his employment to commit a tort which the principal neither directed in fact, nor could be supposed, from the nature of his employment, to have authorized or expected the agent to do…" *Chestnut Assoc., Inc. v. Assurance Co. of America*, 17 F.Supp.3d 1203, 1211 (M.D. Fla. 2014) (citing *Jones v. City of Hialeah*, 368 So.2d 398, 401 (Fla. 3d DCA 1979)).

Rubin did not author the letters, did not approve them, and did not see the letters until after Tein sent them. ECF No. 109-1 ¶¶5-6. Further, Rubin reasonably relied on Tein's professional judgment as an attorney to represent him in a manner that would not generate civil liability. *Id.* ¶4. There is no contrary evidence that

Rubin directed Tein to send the letters, nor could it be reasonably foreseeable by Rubin that Tein would commit defamation on his behalf.

In Florida, libel is a misdemeanor of the first degree (Fla. Stat. §836.01), punishable as a crime by up to one year imprisonment and fines. Fla. Stat. §775.082(4)(a). Rule 4-1.2(d) of the Rules Regulating the Florida Bar states "[a] lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonable should know is criminal." Grippa's vicarious liability theory runs contrary to Tein's professional responsibilities, and the scope of Tein's agency must be within the scope allowed by Rule 4-1.2(d). Grippa's theory of liability, on its face, is outside the scope of Tein's representation of Rubin.

## III.   Alternatively, Tein's letters are protected by the qualified privilege that Grippa cannot overcome by a demonstration of express malice.

### A.   The Qualified Privilege Applies

If the Court determines that Tein's letters are not absolutely privileged, they are at least subject to a qualified privilege. Florida law provides a qualified privilege negating a claim for defamation where the speaker "acts in good faith, with an interest to be upheld, through a statement limited in scope to a specific purpose and published on a proper occasion and manner." *Regions Bank v. Kaplan*, 8:12-CV-1837-T-17MAP, 2013 WL 1193831, at *19 (M.D. Fla. Mar. 22, 2013), *on reconsideration in part*, 8:14-CV-1837-T-17MAP, 2015 WL 1456697 (M.D. Fla. Mar. 30, 2015). A communication made in good faith on any subject matter by one

having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable. *Id.*

Here, Tein authored the letters requesting that DeSantis and Miguel take over the DFS/OFR Investigation into Rubin. Tein had a legitimate interest to uphold by requesting their intervention in an investigation process that he perceived may be unduly influenced, improperly motivated, and unfairly biased. Tein, like every other attorney who represents a client, was acting pursuant to his own professional judgment to protect his client.

Another recognized legal ground for holding that a defendant's statements (or here, an attorney's statements) are privileged is that they are the statements of a citizen to a political authority regarding matters of public concern. *Nodar v. Galbreath*, 462 So. 2d 803, 810 (Fla. 1984). The letters request an investigation which is statutorily authorized by Florida Statute Section 14.32(2). Section 14.32(2) mandates that the Chief Inspector General "(a) [i]nitiate, supervise, and coordinate investigations … to deter, detect, prevent, and eradicate … abuse, mismanagement, and misconduct in government [and] (k) [c]onduct special investigations … at the request of the Governor." Removing potentially unfair bias from an ongoing state investigation is a matter of public concern. Therefore, Tein's letters are also

protected by the qualified privilege as statements to DeSantis and Miguel regarding matters of public concern.

### B.     Grippa Cannot Demonstrate Express Malice

The qualified privilege can be overcome in a defamation claim by showing express malice, where the "gravamen of express malice is the abuse of privilege occasion[ed] by improper motives on the part of the speaker." *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1268 (S.D. Fla. 2004) (citing *Nodar v. Galbreath*, 462 So. 2d 803, 811 n.8 (Fla. 1984)). Express malice has been defined by Florida courts as "ill will, hostility *and* evil intention to defame and injure." *Id.* (citing *Lewis v. Evans*, 406 So. 2d 489, 492 (Fla. 2nd DCA 1981)).

The letters were authored, signed, and sent by Tein. The *speaker* for the statements in the letter was Tein. Under a theory of vicarious liability, which has its own problems on summary judgment as outlined above, Grippa must argue that Rubin stepped into Tein's shoes as the speaker and directed the statements be made with an improper motive evidenced by ill will, hostility, and evil intent. But Rubin was not even aware of the letters and did not author the letters, direct Tein to send them, or discuss the letters' contents with Tein. ECF No. 109-1 ¶¶5-6.

Grippa bears the burden to show that Rubin, through Tein, was "motivated primarily by a desire to harm" Grippa's reputation. *Pomfret v. Atkinson*, 137 So. 3d 1161, 1164 (Fla. 4th DCA 2014). In *Pomfret* the trial court granted a directed verdict

on a defamation counterclaim because it could not be said there was express malice where the speaker was motivated to protect a proper interest. *Id.* Further, whether the speaker also bore some ill will to the allegedly defamed party did not alone establish express malice because "a plaintiff must establish by a preponderance of the evidence that the defamatory statements were false and uttered with common law express malice – i.e., that the defendant's *primary motive* in making the statements was the intent to injury the reputation of plaintiff." *Id.* (citing *DelMonico v. Traynor*, 116 So. 3d 1205, 1220 (Fla. 2013).

The Florida appellate court affirmed, agreeing with the trial court that there was no evidence to show express malice and that "[t]he incidental gratification of personal feelings of indignation is not sufficient to defeat the privilege where the primary motivation is within the scope of the privilege." *Id.* The appellate court reasoned that the speaker's "statements bore some relation to or connection with the subject of inquiry in the underlying lawsuit [and] were therefore protected by a qualified privilege." *Id.*

Tein's primary motivation is clear from the face of the letters themselves, where he tried to persuade DeSantis and Miguel to take over the ongoing DFS/OFR investigation. Tein's letters do not specifically mention Grippa and after the parties have conducted extensive discovery on Grippa's claims, there is still no evidence that Tein's primary motivation in sending the letters was to defame Grippa. Rubin

14

has testified that he was not even aware the letters were sent. ECF No. 109-1 ¶5. Grippa has no evidence to meet her burden to show express malice and summary judgment must be entered in Rubin's favor.

## IV.  Grippa has no evidence of proximate causation

Florida law requires that "[i]n order to recover for defamation, a plaintiff must show that the damages were proximately caused by the defamatory statements." *Cape Publications, Inc. v. Reakes*, 840 So.2d 277, 281 (Fla. 5th DCA 2003). Grippa fails to show that Tein's letters proximately caused her damages: (1) the timing of the letters, e-mailed on June 21, 2019, suggests no correlation to her purported damages; (2) there is no evidence that the letters were provided to reporters, publicized, or distributed to anyone other than DeSantis and Miguel; (3) Grippa cannot identify how she became aware of the letters[3]; and (4) there was no action taken towards Grippa by anyone (including either DeSantis or Miguel) as a result of the letters (neither of those individuals or their offices had any communication with her regarding the letters).

On June 27, 2019, less than six days after Tein's letters were sent, Grippa declined DFS' job offer in an e-mail that made no mention of the letters sent to DeSantis or Miguel. ECF No. 109-7. In fact, not only is there a complete lack of

---

[3] The letters likely came to light via a public records request made by Grippa or during the state court litigation between the parties.

evidence to support proximate causation between the letters and Grippa's e-mail, but the e-mail also itself suggests she did not even know about the letters when she declined the job offer.

Moreover, Grippa must show that the alleged tortious conduct (Tein's letters) rather than conduct that is subject to absolute immunity (the filing of Rubin's Complaint), caused her damage. However, she has offered no evidence that would suggest that her purported damages can be attributed to the letters, rather than the media coverage of Rubin's Complaint.

Since Grippa has not shown proximate causation, summary judgment must be awarded for Rubin on the defamation claim.

## V.    Grippa has no actual damages

Actual damages are a necessary element of Grippa's defamation claim. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). Grippa sought employment with the State as counsel for DFS. Despite any alleged defamation, she was offered the position of deputy general counsel for the ICA, reporting to the general counsel of DFS, Peter Penrod. Grippa was even offered a higher salary, $100,000 annually, for the position which required approval. ECF No. 109-5, 109-6.

Grippa cannot demonstrate that Rubin caused any harm to her potential employment with DFS. Grippa, on her own, decided to reject the DFS job offer. Penrod stated that had Grippa not rejected the offer, she would have been welcomed

to work in the position for which she was hired. ECF No. 109-9 at 43:11-22, 44:2-6.

Grippa has no actual damages – because she did not lose a job, and was not reprimanded or demoted, because of anything Rubin (or Tein) did. Her lack of employment was self-inflicted, and she has not shown any actual damages that resulted from Rubin's conduct. For this additional reason alone, Rubin is entitled to summary judgment on Grippa's defamation claim.

## VI.     Conclusion

Rubin is entitled to final summary judgment on Grippa's defamation claim.

Dated this 14th day of February 2022.

<div style="margin-left:40%">

**RONALD RUBIN,**

**Defendant,**
**By Counsel,**

/s/ James K. Kauffman

James L. Kauffman (FL # 012915)
Bailey & Glasser LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington DC 20007
T: 202.463.2101
F: 202.463.2103
jkauffman@baileyglasser.com

</div>

17

## CERTIFICATE OF WORD COUNT AND FONT

I HEREBY CERTIFY that this document contains 3852 words and has been typed in 14-point font.

/s/ James K. Kauffman
James L. Kauffman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 14, 2022, a copy of the foregoing document was filed and served via the Court's CM/ECF system to all counsel of record.

/s/ James K. Kauffman
James L. Kauffman