IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**KIMBERLY GRIPPA,**

   *Plaintiff*,

v().                                              CASE NO.: 4:20cv457-MW/MAF

**RONALD RUBIN,**

   *Defendant.*

_____/

### ORDER DENYING MOTION FOR SUMMARY JUDGEMENT

This Court has considered, without hearing, Defendant's motion for summary judgement, ECF No. 110, Plaintiff's response, ECF No. 125, Defendant's reply, ECF No. 128, and Plaintiff's sur-reply, ECF No. 132. For the reasons provided below, Defendant's motion for summary judgment is **DENIED**.

I

Plaintiff claims that Defendant defamed her when Defendant, through his former counsel Michael Tein ("Tein"), sent letters to Florida Governor Ron DeSantis and Chief Inspector General Melinda Miguel (the "Tein Letters"), each of which implied that Plaintiff violated numerous Florida laws. ECF No. 1-2 at 2-6; ECF No. 125 at 2. At the time the Tein Letters were sent to their respective recipients, Defendant was under investigation by Florida's Department of Financial Services ("DFS") for sexual misconduct. ECF No. 109-1 at 2. The Tein Letters urged

Governor DeSantis and General Miguel to "assume jurisdiction over the pending investigation of [Defendant] and to open an investigation into heavily corroborated evidence of misuse of public office by CFO Jimmy Patronis and his inner circle . . . ." ECF Nos. 109-3 at 2; 109-4 at 2; 124-9 at 4; 124-10 at 1. Both letters go on to accuse CFO Patronis ("Patronis") and "his inner circle" of violating numerous Florida laws pertaining to extortion, unlawful compensation, and misuse of confidential information. *Id*. Both letters also reference a lawsuit that Defendant filed against Florida lobbyist R. Paul Mitchell (the "Mitchell Lawsuit"), where Defendant alleged "improper, unethical, and perhaps unlawful conduct on the part of [Patronis] and his enterprise . . . ." ECF Nos. 109-3 at 3; 109-4 at 2; 124-9 at 4; 124-10 at 2. The Tein Letters encourage their recipients to review the civil complaint filed in conjunction with the Mitchell Lawsuit (the "Mitchell Complaint"), which, both letters claim, includes "attach[ments] and hyperlinks to supporting documentary evidence, including public records, email, and text messages." *Id*. The Mitchell Complaint names Plaintiff as a member of Patronis's criminal enterprise and alleges that Plaintiff and others "carr[ied] out a pattern of criminal activity for their own benefit, aimed at [Defendant], other individuals and the Citizens of the State of Florida." ECF No. 124-13 at 10.

      Defendant moves for summary judgment and raises several arguments as to why he is entitled to judgement as a matter of law. First, Defendant argues that

Plaintiff's claims are barred by Florida's absolute privilege. ECF No. 110 at 7–9. Second, Defendant argues that Plaintiff's claims are barred by Florida's qualified privilege, in the event that Florida's absolute privilege does not apply. *Id*. at 11–15. Third, Defendant argues that he cannot be held vicariously liable for Tein's publication of the Tein Letters because (i) Plaintiff failed to properly plead vicarious liability under Florida law and (ii) Tein exceeded the scope of his employment by publishing the Tein Letters. *Id*. at 9–11. Fourth, Defendant argues that Plaintiff cannot show that she suffered damages because (i) Plaintiff has not actually suffered any damages and (ii) Plaintiff cannot show that the Tein Letters proximately caused of any of her purported damages. *Id*. at 15–17. Plaintiff opposes each of Defendant's arguments.

II

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Facts are "material" with respect to the substantive law if they form disputes that are not "irrelevant or unnecessary" and have the potential to "affect the outcome of the suit." *Id*. A moving party is entitled to summary judgment when the nonmoving party fails to prove an

essential element of its case, an element for which the nonmoving party has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This Court accepts the facts in the light most favorable to the nonmovant. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008).

Under *Erie*, this Court applies Florida's substantive law for claims of defamation. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). "Defamation under Florida law has these five elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity of the matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statements must be defamatory." *Id.* A statement is considered defamatory per se when "considered alone without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession." *Blake v. Giustibelli*, 182 So. 3d 881, 884 (Fla. 4th DCA. 2016) (citing *Richard v. Gray,* 62 So. 2d 597, 598 (Fla. 1953)).

Florida law also recognizes that some statements can be considered defamatory based on the implications that can be drawn from them, which is otherwise known as defamation by implication. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). "Defamation by implication arises, not from what is

4

stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible for the defamatory implication . . . ." *Id.* (citations omitted).

III

Defendant first argues that, based on the undisputed material facts of this case, Plaintiff's claims are barred by Florida's absolute privilege. The crux of Defendant's argument is that the Tein Letters don't specifically identify Plaintiff and that Plaintiff's supposedly criminal activity would only be known after reading the Mitchell Complaint, which is subject to Florida's absolute privilege.[1] This Court finds Defendant's argument unpersuasive.

The absolute privilege provides absolute immunity to "any act occurring during the course of a judicial proceeding, regardless of whether the act involved a defamatory statement . . . so long as the act has some relation to the proceeding." *DelMonico v. Traynor*, 116 So. 3d 1205, 1216 (Fla. 2013) (citing *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Insurance Co.,* 639 So. 2d 606, 608 (Fla. 1994)). "In cases where [the Florida Supreme Court] has applied the absolute privilege to issues involving defamation,

---

[1] In its order granting in part and denying in part Defendant's motion to dismiss, this Court determined that the Mitchell Complaint is subject to Florida's absolute privilege. ECF No. 22 at 7–9.

5

the defamatory statements at issue were made either in front of a judicial officer or in pleadings or documents filed with the court or quasi-judicial body." *DelMonico*, 116 So. 3d at 1217. The safeguards present in a formalized judicial environment "facilitate[] and promote[] an unimpeded speaking environment while protecting an individual from false or malicious statements . . . ." *Id*. This privilege does not extend to the Tein Letters, as they are neither communications before a judicial officer nor part of pleadings or documents that filed with a court or quasi-judicial body. *See id*.

Defendant's argument might have merit if the Tein Letters included the Mitchell Complaint as an attachment or simply referenced the existence of the Mitchell Lawsuit. *See Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 362 (Fla. 4th DCA 1997) (holding that an attorney who provided a reporter with a notice of claim to a reporter was entitled to absolute immunity for the statements contained within the notice); *Ball v. D'Lites Enterprises, Inc.*, 65 So. 3d 637, 641 (Fla. 4th DCA 2011) (interpreting *Stewart* to hold that the publication of a complaint and its corresponding documents are covered by absolute immunity because those documents "are part of the judicial proceeding"). The Tein Letters, however, go a step further, as they (i) include a separate statement that alleges the existence of a criminal enterprise at DFS, whose members violated numerous Florida laws, and (ii) encourage the recipients to review the Mitchell Complaint, which specifically names Plaintiff as a member of that criminal enterprise. Defendant does not need to use

6

Plaintiff's name in the Tein Letters for those statements to be defamatory, as it is enough for Defendant to claim that a criminal enterprise exists in the Tein Letters and then imply that Plaintiff is a member of that enterprise by directing readers to the Mitchell Complaint. *See Jews For Jesus, Inc.*, So. 2d at 1107. Accordingly, Plaintiff's claims are not barred by Florida's absolute privilege.

IV

Next, Defendant argues that, based on the undisputed material facts of this case, Florida's qualified privilege applies to the Tein Letters and that the privilege bars Plaintiff's complaint. This Court disagrees.

"Whether a statement is protected by a qualified privilege is a question of law for the court to decide *only if* the circumstances surrounding the communication are undisputed or so clear under the evidence as to be unquestionable." *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1264 (S.D. Fla. 2004) (citing *Nodar v. Galbreath*, 462 So.2d 803, 810 (Fla. 1984)) (emphasis added); *see Glickman v. Potamkin*, 454 So. 2d 612, 613 (Fla. 3rd DCA 1984) ("In a defamation action, the affirmative defense[] of . . . qualified privilege present[s] factual questions for resolution by the jury."). Florida's qualified privilege has five elements: "(1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion; and (5) publication in a proper manner."

7

*Falic*, 347 F. Supp. 2d at 1264 (citing *Thomas v. Tampa Bay Downs, Inc.,* 761 So. 2d 401, 404 (Fla. 2d DCA 2000)). A defendant asserting a qualified privilege has the burden of demonstrating that a defamatory statement is protected by the privilege. *Randolph v. Beer*, 695 So. 2d 401, 404 (Fla. 5th DCA 1997).

Defendant fails to show that, based on the undisputed material facts of this case, the Tein Letters are subject to Florida's qualified privilege. For example, Defendant fails to show that it is undisputed that the Tein Letters were published in a proper manner. While it is true that the Tein Letters were sent to individuals that had the authority to intervene in Defendant's sexual harassment investigation pursuant to Fla. Stat. § 14.32, the letters were also sent to numerous other Florida officials that did not have the authority under Fla. Stat. § 14.32 to intervene in Defendant's investigation.[2] ECF Nos. 109-3 at 3; 109-4 at 2; 124-9 at 4; 124-10 at 3 (noting that copies of the letters were sent to Inspector General Bradley Perry, Attorney General Ashley Moody, and Chief Financial Officer Jimmy Patronis). Plaintiff argues that the Tein Letters were sent to these other Florida officials in an

---

[2] Based on the contents of the Tein Letters, their purpose was to convince Governor DeSantis and General Miguel to intervene in Defendant's sexual misconduct investigation pursuant to section 14.32, Florida Statutes. Under Florida law, Florida's Chief Inspector General has the authority to intervene in investigations of potential government misconduct. Fla. Stat. § 14.32(2)(a). Florida's Governor also has the authority to direct the Chief Inspector General to conduct investigations of government misconduct. Fla. Stat. § 14.32(2)(k). Florida's Inspectors General, Florida's Attorney General, and Florida's Chief Financial Officer are not authorized to intervene in such investigations under section § 14.32, Florida Statutes.

8

attempt to derail the investigation of Defendant because Plaintiff was seeking employment with their respective agencies. ECF No. 125 at 26.

Based on the language of the Tein Letters and their intended recipients, there exists a genuine dispute of material fact as to whether or not the Tein Letters were published in a proper manner. Thus, this Court is unable to determine at this juncture if Florida's qualified privilege applies to the Tein Letters.[3] Accordingly, this Court finds Defendant's argument unpersuasive.

V

Defendant's next two argument center around vicarious liability. Defendant also argues that summary judgement should be granted in its favor because (i) Plaintiff did not plead a separate count for vicarious liability in her complaint, as required under Florida law, and (ii) Tein exceeded the scope of his employment by publishing the Tein Letters, which Defendant claims he did not authorize and could not reasonably foresee Tein doing. This Court does not find Defendant's arguments convincing.

---

[3] Defendant also argues that, based on the undisputed material facts of this case, Plaintiff cannot show express malice on the part of Defendant, which is necessary to overcome Florida's qualified privilege. ECF No. 110 at 13; *see Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1268 (S.D. Fla. 2004) ("The Florida courts have further stated, the gravamen of express malice is the abuse of a privileged occasion by improper motives on the part of the speaker.") (citations omitted). However, because this Court has not determined if Florida's qualified privilege applies to the Tein Letters, this Court need not address that argument at this juncture. In any event, the issue of malice is likely a question for the jury.

Under Florida Rule of Civil Procedure 1.110(b)(2), plaintiffs are required to allege vicarious liability as a separate count within a complaint. *See Goldschmidt v. Holman*, 571 So. 2d 422, 423 (Fla. 1990) (citing *Designers Tile International Corp. v. Capital C Corp.,* 499 So.2d 4 (Fla. 3d DCA 1986) (holding that a separate cause of action for vicarious liability must be plead)). This case, however, is before a federal court, where "the rules of pleading . . . are established by the Federal Rules of Civil Procedure, not by state law." *Inland Dredging Co., L.L.C. v. Panama City Port Auth.*, 406 F. Supp. 2d 1277, 1279 (N.D. Fla. 2005). And the Federal Rules of Civil Procedure contain no similar requirement. Thus, Defendant's argument that Plaintiff improperly alleged vicarious liability is without merit.

Next, Defendant argues that the undisputed material facts of this case show (i) that Tein exceeded the scope of his employment when sending the Tein Letters and (ii) that it was not reasonably foreseeable that Tein would commit defamation on Defendant's behalf. ECF No. 110 at 10–11 (citing *Jones v. City of Hialeah*, 368 So. 2d 398, 400 (Fla. 3rd DCA. 1979) ("There is no liability where the agent has stepped aside from his employment to commit a tort which the principal neither directed in fact, nor could be supposed, from the nature of his employment, to have authorized or expected the agent to do.")). In support, Defendant points to his sworn declaration, where Defendant states that (i) Defendant relied entirely on Tein's professional judgement in all actions taken on his behalf, (ii) Defendant was not

aware that Tein sent the Tein Letters until after they were sent, (iii) Tein did not ask for Defendant's approval before taking actions on his behalf, and (iv) Defendant did not author, contribute, direct, or approve the Tein Letters. ECF No. 109 at 2–3. Defendant claims that there is "no contrary evidence that Defendant directed Tein to send the [Tein Letters]" within the record before this Court. ECF No. 110 at 10 (citing to ECF No. 109-1 ¶¶ 5–6).

But as Plaintiff points out, Defendant ignores the language within the Tein Letters in making his argument. Both letters include language suggesting that Defendant was speaking directly through Tein by sending the letters and that Defendant authorized their publication. *See* ECF No. 109-3 at 2–3 ("*We* respectfully request that you direct [General Miguel] to assume jurisdiction . . . . *We* are not impugning the integrity of the inspectors general . . . *our* point is that there is necessarily an institutional conflict . . . .") (emphasis added); ECF No. 109-4 at 2 (*We* respectfully request that you assume jurisdiction . . . . The grounds for *our* request are described in *our* letter . . . .) (emphasis added). Furthermore, email correspondence between Defendant, his former attorney Jared W. Whaley ("Whaley"), and Defendant's media consultant also suggest that Defendant maintains close control over correspondences sent on his behalf. For example, in an email from Defendant to Whaley, Defendant suggested adding language he personally drafted to a press release concerning Defendant's sexual harassment

11

investigation and the need for General Miguel to intervene in the investigation. ECF No. 124-14 at 63. Other emails show that Defendant directed Whaley to send a letter to the *Orlando Sentinel* requesting corrections to an article about Defendant's investigation. *Id.* at 103. The emails also show that Defendant prefers to have his attorneys send correspondence on his behalf, as Defendant's media consultant indicated that he was "baffled" when Defendant requested that his attorney send the correction letter to the *Orlando Sentinel* and that no one has ever "suggested that such communication come from an attorney." *Id*. at 108.

While these emails do not concern the Tein Letters, Defendant's history of involvement with drafting correspondences sent by his attorneys, coupled with the language of the Tein Letters themselves, shows that there is a genuine dispute of material fact regarding Defendant's involvement with drafting and publishing the Tein Letters. Accordingly, Defendant is not entitled to summary judgement on these grounds.

## VI

Defendant's next two arguments relate to damages, an essential element of defamation under Florida law. Defendant claims that the undisputed facts of this case show that Plaintiff has not suffered any damages, since Plaintiff decided on her

own to decline an employment opportunity for DFS.[4] Defendant also argues that, based on the undisputed material facts of this case, Plaintiff cannot show that the Tein Letters proximately caused any of her purported damages. Since damages are a necessary element of defamation under Florida law, Defendant argues that Plaintiff's inability to show damages entitles Defendant to summary judgement. This Court disagrees.

In response to Defendant's arguments, Plaintiff argues that the statements within the Tein Letters constitute defamation per se, which would entitle Plaintiff to at least nominal damages. *See Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1253 (S.D. Fla. 2014) ("As it is often difficult for a plaintiff to prove actual damages, courts and juries have historically presumed some level of damage from defamatory publications . . . ") (citation omitted); *Krauser v. Evollution IP Holdings, Inc.,* No. 12–80977–CIV, 2013 WL 5313403, at *9 (S.D. Fla. Sept. 20, 2013) (explaining where a plaintiff does not proffer evidence of actual damages, presuming damages allows a defamation claim to survive summary judgment, and plaintiff may be awarded nominal damages at trial as vindication of his reputation). Because the Tein Letters accuse Plaintiff of committing multiple serious crimes, the letters undoubtedly harm her profession as an attorney and may constitute defamation per

---

[4] Plaintiff asserts that she declined an employment offer from DFS in response to the Tein Letters. ECF No. 125 at 12.

se on these grounds. *Blake*, 182 So. 3d at 884 ("A publication is libelous per se, or actionable per se, if, when considered alone without innuendo . . . it tends to injure one in his trade or profession.") (citations omitted). Plaintiff may be entitled to additional damages besides nominal damages, but this Court need not determine that at this juncture. What is clear is that the undisputed facts of this case do not show what Defendant claims they do: that Plaintiff has suffered no damages.

Defendant's proximate causation argument is also insufficient, since Plaintiff does not need to show proximate causation for the damages resulting directly from defamation per se. Under Florida law, damages for defamation per se are "those which the law presumes must naturally, proximately, and necessarily result from the publication of the libelous matter. They arise by inference of law, and are not required to be proven by evidence." *Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So. 3d 710, 727 (Fla. 4th DCA. 2010) (citing *Campbell v. Jacksonville Kennel Club,* 66 So.2d 495 (Fla.1953)). In other words, some damages directly associated with defamation per se are presumed, and Plaintiff need not show that such statements proximately caused those damages. Whether or not Plaintiff can show that the Tein Letters were the proximate cause of other damages, such as Plaintiff's missed employment opportunity, is another question entirely, but not one that this Court needs to address at this time.

\* \* \*

Accordingly, for the reasons provided above, Defendant's motion for summary judgement, ECF No. 110, is **DENIED**.

**SO ORDERED on March 22, 2023.**

<u>s/Mark E. Walker</u><br>
**Chief United States District Judge**